# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

CLERK'S OFFICE
A TRUE COPY
Jul 29, 2024
s/ E Borden
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

In the Matter of the Search of  )
*(Briefly describe the property to be searched or identify the person by name and address)*  )
USPS Priority Mail parcel 9505511634914207986041  )

Case No. 24 MJ 162

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
USPS Priority Mail parcel 9505511634914207986041 mailed from Phoenix, AZ

located in the ___Eastern___ District of ___Wisconsin___, there is now concealed *(identify the person or describe the property to be seized)*:
A controlled substance, fruits of crime, or other evidence of distribution of a controlled substance, and unlawful use of a communication facility, in violation of 21 U.S.C. §§ 841(a)(1), 843(b), and 846.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution of a controlled substance, unlawful use of a communication facility, |
| 21 U.S.C. § 843(b) | and conspiracy. |
| 21 U.S.C. § 846 | |

The application is based on these facts:
Please see attached affidavit, which is hereby incorporated by reference.

☑ Continued on the attached sheet.

x Delayed notice of __180__ days *(give exact ending date if more than 30 days:* __1/23/2025__ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Christopher Conway* (Digitally signed by Christopher Conway Date: 2024.07.29 08:19:16 -05'00')

*Applicant's signature*

TFO Christopher CONWAY, Inspector, USPIS
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
___Telephone___ *(specify reliable electronic means)*.

Date: 07/29/2024

*William E. Duffin*
*Judge's signature*

City and state: Milwaukee, Wisconsin

William Duffin, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Christopher Conway, being first duly sworn, hereby depose and state as follows;

**BACKGROUND, TRAINING, AND EXPERIENCE:**

1. I am currently a Task Force Officer assigned to the United States Postal Inspection Service ("USPIS"). I have been employed as a Police Officer full-time law enforcement officer since December 2002 with the Milwaukee Police Department.

2. I am currently assigned to the USPIS Milwaukee Office, Multi-function team, as well as being placed on the North Central High Intensity Drug Trafficking Area ("HIDTA") Interdiction Unit. I have been assigned to North Central HIDTA Interdiction Unit since 2018 as an investigator. I have also been assigned to numerous other specialty units in the Milwaukee Police Department during my career which involved narcotics investigations. The USPIS Milwaukee Office investigates USPS customers involving narcotics, prohibited mailings, controlled substances, and other matters related to the Postal Service. The Milwaukee office's team has intercepted numerous parcels, which were found to contain narcotics or proceeds of narcotics trafficking and other criminal activity.

3. The USPIS is the primary investigative arm of the United States Postal Service ("USPS") and is charged under Title 18, United States Code, 3061 with the enforcement of laws governing the use and movement of the United States Mail, including, but not limited to, the misuse and fraudulent schemes involving the mail, crimes relating to mail fraud, identity theft, and narcotics trafficking involving the U.S. Mail.

4. I have participated in numerous complex narcotics investigations which involved violations of state and federal controlled substances laws including Title 21, United States Code, Sections 841(a)(1) and 846 (possession with intent to distribute a controlled substance and

1

conspiracy to possess with intent to distribute a controlled substance), and other related offenses. I have had both formal training and have participated in numerous complex drug trafficking investigations, More specifically, my training and experience includes the following:

   a. I have used informants to investigate drug trafficking. Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States;

   b. I have also relied upon informants to obtain controlled substances from dealers, and have used undercover officers to make purchases of controlled substances from dealers;

   c. I have participated in several search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

   d. I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances;

   e. I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded;
   f. I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking operations;

   g. I know that drug traffickers commonly have in their possession, and at their residences and other storage locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

   h. I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials;

   i. I know large-scale drug traffickers often purchase and/or title their assets in fictitious names, aliases, or the names of relatives, associates, or business entities to avoid detection of these assets by government agencies. I know that even though these assets are in names other than the drug traffickers, the drug traffickers actually own and continue to use these assets and exercise dominion and control over them;

   j. I know large-scale drug traffickers maintain on-hand large amounts of U.S. currency to maintain and finance their ongoing drug business;

k. I know it is common for drug traffickers to maintain books, records, receipts, notes, ledgers, airline tickets, and receipts relating to the purchase of financial instruments, and/or the transfer of funds and other papers relating to the transportation, ordering, sale, and distribution of controlled substances. I also know that the aforementioned books, records, receipts, notes, ledgers, etc. are maintained where the traffickers have ready access to them;

l. I know it is common for large-scale drug traffickers to secrete contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residences, their businesses, storage facilities, and/or other locations over which they maintain dominion and control, for ready access and to conceal these items from law enforcement authorities or rival drug traffickers. These secure locations include, but are not limited to safes, briefcases, purses, locked filing cabinets, and hidden storage areas in natural voids of a residence;

m. I know it is common for persons involved in large-scale drug trafficking to maintain evidence pertaining to their obtaining, secreting, transferring, concealing, and/or expenditure of drug proceeds, such as currency, financial instruments, precious metals and gemstones, jewelry, books, records of real estate transactions, bank statements and records, passbooks, money drafts, letters of credit, money orders, bank drafts, cashier's checks, bank checks, safe deposit box keys, and money wrappers. These items are maintained by the traffickers within residences (including attached and unattached garages), businesses or other locations over which they maintain dominion and control;

n. I know large-scale drug traffickers often use electronic equipment such as telephones (land-lines and cell phones), computers, telex machines, facsimile machines, currency counting machines, and telephone answering machines to generate, transfer, count, record and/or store the information described in the items above, as well as conduct drug trafficking activities;

o. I know when drug traffickers amass large proceeds from the sale of drugs, the drug traffickers attempt to legitimize these profits through money laundering activities. To accomplish these goals, drug traffickers utilize the following methods, including, but not limited to: domestic and international banks and their attendant services, securities brokers, professionals such as attorneys and accountants, casinos, real estate, shell corporations and business fronts, and otherwise legitimate businesses that generate large quantities of currency;

p. I know drug traffickers commonly maintain addresses or telephone numbers in books or papers that reflect names, addresses, and/or telephone numbers of their associates in the trafficking organization; and

q. I know drug traffickers take (or cause to be taken) and maintain photographs of themselves, their associates, their property, and their drugs.

5. In addition, during the course of such residential searches, I and other agents have also found items of personal property that tend to identify the person(s) in residence, occupancy, control, or ownership of the subject premises. Such identification evidence is typical of the articles people commonly maintain in their residences, such as canceled mail, deeds, leases, rental agreements, photographs, personal telephone books, diaries, utility and telephone bills, statements, identification documents, and keys.

6. Based on my training and experience, on the job training, and working with other USPIS Postal Inspectors and HIDTA drug task force officers, I know narcotics, drugs, paraphernalia, controlled substances, and moneys associated with the sale of narcotics, drugs, and controlled substances are sent through the USPS system, and I am familiar with many of the methods used by individuals who attempt to use the USPS to illegally distribute controlled substances.

## PURPOSE OF AFFIDAVIT

7. This affidavit is made in support of a search warrant for the **SUBJECT PARCEL** (described below) for items which constitute the fruits, instrumentalities, and evidence of violations of Title 21, United States Code, Sections 841(a)(1) (Distribution and Possession with Intent to Distribute a Controlled Substance); 846 (Conspiracy to Distribution and Possession with Intent to Distribute a Controlled Substance); and 843(b) (Unlawful Use of a Communication Facility (including the mails) to Facilitate the Distribution of a Controlled Substance). To seize: any controlled substance, and any paraphernalia associated with the manufacture and distribution of controlled substances including packaging materials and containers to hold controlled substances; proceeds of drug trafficking activities, such as United States currency, money orders, bank checks, precious metals, financial instruments; and drugs or money ledgers, drug distribution

4

or customer lists, drug supplier lists, correspondence, notations, logs, receipts, journals, books, records, and other documents noting the price, quantity, and/or times when controlled substances were obtained, transferred, sold, distributed, and/or concealed.

## PARCEL TO BE SEARCHED

8. This affidavit is made in support of an application for a search warrant for USPS Priority Mail parcel **9505511634914207986041** ("**SUBJECT PARCEL**"). **SUBJECT PARCEL** is approximately a 16" x 16" x 16" USPS parcel weighing approximately 21 lbs. 5 oz. The shipping label for the **SUBJECT PARCEL** is handwritten and indicates it is from "Jayler Beard 20910 N. Tatum Blvd. Phoenix, AZ 85050." **SUBJECT PARCEL** bears a handwritten label addressed to "Amber Holmstead 4204 Manhattan Drive Racine, WI 53402". **SUBJECT PARCEL** was postmarked on July 25, 2024, in Phoenix, AZ 85032. The postage paid was $92.30.

## PROBABLE CAUSE

9. I review Postal Service records and labels of parcels delivered to the state of Wisconsin from source narcotics areas or sent to those source narcotics areas from Wisconsin. I do this because I know, based on my training and experience, drug traffickers will sometimes use USPS Priority Mail Express service, which is the intended USPS one-day delivery product or USPS Priority Mail service, which is the intended USPS two-day delivery product. Based on my training and experience with the USPIS, I know drug traffickers use Priority Mail or Priority Mail Express delivery service because of its reliability and the ability to track the article's progress to the intended delivery point. In my training and experience, traffickers will often use fictitious names and/or addresses as well as incomplete names and addresses in an attempt to hide their trafficking efforts from law enforcement.

5

10. Based on my training and experience, I am aware Arizona is a source area for controlled substances. As such, controlled substances are frequently transported from Arizona via the USPS, and the proceeds from the sale of the controlled substances are frequently returned to Arizona via the USPS and/or other means. These proceeds are generally in large amounts of money, oftentimes over $1000.

11. On July 29, 2024, I was conducting parcel screening at the Milwaukee Processing and Distribution Center Post Office, located at 345 W St Paul Ave Milwaukee, Wisconsin 53203, when the **SUBJECT PARCEL** was found to be suspicious.

*CLEAR database query and Canine alert to the SUBJECT PARCEL*

12. The Consolidated Lead Evaluation and Reporting ("CLEAR") database is a public records product which is designed for law enforcement officers in locating subjects and witnesses, verifying identities of individuals, and gathering background information for use in investigations. A search of the CLEAR database revealed no person by the name of Jayler Beard currently lives, or has lived, at 20910 N. Tatum Blvd. Phoenix, AZ 85050. Further the CLEAR database revealed no person by the name of Jayler Beard was associated with any addresses in Arizona. A search of the CLEAR database revealed no person by the name of Amber Holmstead currently lives, or has lived, at 4204 Manhattan Drive Racine, WI 53402. Further the CLEAR database revealed no person by the name of Amber Holmstead was associated with any addresses in Racine, Wisconsin. Based on my training and experience, it appeared Jayler Beard and Amber Holmstead were fictitious names, likely used to elude law enforcement detection.

13. **SUBJECT PARCEL** is indicative of drugs trafficked through the United States Mail from Arizona into the interior of the United States. More specifically, the **SUBJECT PARCEL** bears a fictitious recipient and sender and a return address originating from a drug

source state, it was sent USPS Priority Mail service, and paid in cash. I know that after conducting an address history of the recipient address of 4204 Manhattan Drive, Racine, Wisconsin 53402 that the address has received two prior parcels from Arizona and both were sent USPS Priority Mail service and both were paid in cash, which are common traits when engaged in postal based drug trafficking.

14. Based on conversations with Racine Police Department, I know that the **SUBJECT PARCEL** is related to an ongoing drug investigation at the recipient address 4204 W. Manhattan Drive Racine, WI 54302. During this investigation case agents have purchased quantities of methamphetamine from a target that is believed to be residing at 4204 W. Manhattan Drive Racine, WI 54302.

15. On July 29, 2024 I met with the Milwaukee Police Department Police Officer Chris Navarrette ("PO Navarrette") and his canine "CZAR" at the High Intensity Drug Trafficking Area ("HIDTA") office. Together, PO Navarrette and canine CZAR are a certified drug detection team. Canine CZAR alerts to the odor of a controlled substance (specifically heroin, cocaine, marijuana, methamphetamine and other controlled substances made with like components) by passively sitting and staring at the area or object emitting or containing the odor of the controlled substances he is trained to alert to. PO Navarrette and canine CZAR have received four weeks of intensive training and certification through Shallow Creek Kennels, deploying and utilizing a drug detection canine; that this certification (July 2019) is based on guidelines set forth by the North American Police Work Dog Association (NAPWDA), which is a nationally based group in partnership with local, state, federal and international agencies including private vendors, law enforcement and first responder; that this training establishes consensus-based best practices for the use of detection canine teams by improving the consistency and performance of deployed

7

teams, which will improve interdiction efforts as well as courtroom acceptance. PO Navarrette and canine CZAR have detected controlled substances more than 400 times in the past (including training); that in each alert drugs or a drug nexus that canine CZAR is trained to find have been recovered; and that canine CZAR alerts have been the basis for more than forty search warrants and five vehicle sniffs.

16. On July 29, 2024 Postal Inspector Tyler FINK placed the **SUBJECT PARCEL** on the ground in the HIDTA office along with four other similarly sized empty parcels. PO Christopher NAVARRETTE advised me that CZAR located and indicated to the parcel known to me to be the **SUBJECT PARCEL**. PO Navarrette informed me that CZAR's indication denoted the presence of controlled substances or other items, such as proceeds of controlled substances, which have been recently contaminated with, or associated with the odor of one or more controlled substances that CZAR is trained to detect.

17. Based upon the information as outlined in this affidavit, I believe there is probable cause to indicate the contents of the **SUBJECT PARCEL** is drug related, and thus constitutes the fruits, instrumentalities, and evidence of violation of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846.

18. Because this affidavit is submitted for the limited purpose of securing authorization for a search warrant, I have not included each and every fact known to me concerning this investigation and search warrant application. I have set forth only the facts that I believe are essential to establish the necessary foundation for the requested search warrant.

19. The **SUBJECT PARCEL** is currently secured at the HIDTA Office.

20. Further, it is respectfully requested that this Court issue an order pursuant to Title 18 U.S.C. § 3103a(b), finding that immediate notification may have an adverse result listed in Title

18 U.S.C.§ 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized for a period up to 180 days, unless an extension is requested. I believe that immediate notification of the contents of this affidavit and related documents may have a significant and negative impact the investigation into Postal based drug trafficking and may severely jeopardize its effectiveness.